## UNITED STATES v. .8677 ACRE OF LAND IN RICHLAND COUNTY AND CITY OF COLUMBIA, S. C., et al.

### No. 635.

District Court, E. D. South Carolina.

Dec. 6, 1941.

92

Yancey A. McLeod, Sp. Atty., and Claud N. Sapp, U. S. Atty., both of Columbia, S. C., for petitioner.

D. W. Robinson, Jr., of Columbia, S. C., for defendants.

WYCHE, District Judge.

On October 22, 1941, the United States filed a condemnation proceeding for the purpose of acquiring title to .8677 of an acre of land located in the triangle bounded by Laurel, Assembly and Blanding Streets in the City of Columbia, South Carolina, to erect thereon a recreational center, as provided for in "An Act to expedite the provision of housing in connection with national defense, and for other purposes", Public Law No. 849, 76th Congress, 54 Stat. 1125, 42 U.S.C.A. § 1521 et seq., and in "An Act to provide for the acquisition and equipment of public works made necessary by the defense program", Public Law No. 137–77th Congress, 55 Stat. 361, 42 U.S.C.A. §§ 1521, 1523, 1531 et seq.

At the same time on a Declaration of Taking, signed by the Secretary of War, it asked and obtained an order immediately vesting title in the United States, 40 U.S.C.A. § 258a, and there was deposited into the registry of this Court the sum of ten thousand ($10,000) dollars, being the estimated amount of just compensation for the property, and the right to just compensation was vested in the persons entitled thereto to be ascertained and awarded in this proceeding.

On October 29, 1941, by permission of this Court, Mr. and Mrs. Edwin G. Seibels were allowed to intervene. To their motion to vacate the order vesting title in the United States and to dismiss the condemnation proceeding the United States filed a motion to strike and a return asking that the petition of the intervenors be dismissed and the order permitting them to intervene he reopened and vacated.

Part of the property being condemned is owned by the City of Columbia, and the petitioners allege that the remaining portion is owned by the State of South Carolina. The part owned by the City was conveyed to it on the 11th day of February, 1907, Richland County, Deed Book

AQ, page 247, by the late Edwin W. Robertson, at that time the owner and occupant of 1001 Laurel Street, "To have and to hold the above mentioned premises unto the City of Columbia and its successors, in trust nevertheless for the perpetual uses of the public as a public park and for no other purposes." On October 3, 1929, Evelyn P. Robertson and Thomas J. Robertson, devisees under the will of Edwin W. Robertson, conveyed the property at 1001 Laurel Street, a two-acre tract at the northwest corner of Laurel and Assembly Streets, to Rosamond K. Seibels, (Mrs. Edwin G. Seibels). Since that date she, with her husband, Edwin G. Seibels, has resided there. This home, with its gardens, is one of the most beautiful in Columbia. It faces south on the property being condemned.

█ The remaining portion of the property being condemned, it is alleged, is property belonging to the State of South Carolina, and dedicated for street and highway purposes. Under the Act of 1786 (4th Stat. 751) laying out the capitol city and the surveyor's map made pursuant thereto, Laurel Street was laid out with a width of 100 feet and Assembly Street with a width of 150 feet. The proposed condemnation proceeding, according to a map presented at the hearing by the Government, includes a strip of Laurel Street 57.9 feet in width from Assembly Street across the entire northern end of the triangle, about 335 feet, leaving of Laurel Street between the Seibels property and the property being condemned only a width of 42.1 feet. A substantial portion of Laurel Street as originally laid out is included in this eminent domain proceeding. The eastern line of the property being condemned is 139.6 feet from the property line along the eastern side of Assembly Street. Assuming that this property line is correctly located, intervenors contend that a strip of Assembly Street 10.4 feet in width is included within the condemnation proceeding, and that a portion of Laurel Street as originally laid out is included in this proceeding. While these streets have never been opened to their full width in the sense that a roadbed has been laid over them, no structure has ever been placed on the unopened portion, no one has made any claim adversely to the State and the entire width of each has continued until this proceeding available for actual use as a street. Mere non-user

does not deprive the State of its title. Chafee v. City of Aiken, 57 S.C. 507, 517, 35 S.E. 800; Grady et al. v. City of Greenville et al, 129 S.C. 89, 99, 100, 123 S.E. 494, 495. The Government contends, however, that there would be no encroachment upon Assembly Street, which is one of the boundary streets of the parcel in question, and that the Government's property line would coincide with the present established property line of Assembly Street, thereby enabling it to be widened to its maximum property line width, should the occasion therefor ever arise, and that, while there would be an encroachment upon Laurel Street, another boundary street, should the intervening petitioners successfully establish their contention that Laurel Street is entitled by statute to a width of 100 feet, nevertheless, it is not one of the principal thoroughfares of the City, is not feasibly susceptible, because of its terrain, to being materially widened at a future date, and that it is to remain undisturbed and without change or encroachment to the extent that it is now opened and paved.

█ The intervenors here are citizens, residents and taxpayers of the City of Columbia, of the State of South Carolina, and of the United States. Mrs. Seibels is Edwin W. Robertson's successor in title to the two-acre plot of land and the house at 1001 Laurel Street immediately north of the property being condemned and separated from it only by the reduced width, about 42 feet, of Laurel Street. It is alleged that Mr. and Mrs. Seibels are affected by the erection and operation of this building differently from any other persons, and that the effect of the erection and maintenance of this recreational center will largely destroy the value of their home. The papers before me show that the United States has not made the State of South Carolina a party to this proceeding, the State has neither intervened nor made objection to the condemnation, and it appears that the City of Columbia is not resisting the condemnation proceeding because, though the intervention petition and rule to show cause was served upon the City on October 29, 1941, it has not appeared in the cause. In fact, it is clear that the City desires that the Government acquire title to this property, and has cooperated to that end. In these circumstances these petitioners are entitled to intervene and to press this motion as persons injured in kind different from others.

94

Miller et al. v. City of Columbia, 138 S. C. 343, 136 S.E. 484; McQuillan, Municipal Corps. (2d Ed.) Vol. V, Section 1730; as citizens and taxpayers, Kirk v. Clark, 191 S.C. 205, 4 S.E.2d 13; Haesloop v. City Council of Charleston, 123 S.C. 272, 115 S.E. 596; Green v. City of Rock Hill, 149 S.C. 234, 147 S.E. 346; Mrs. Seibels is entitled to make this motion as the successor in title to Edwin W. Robertson, McQuillan, Municipal Corps. (2d Ed.) Vol. V, section 1728, and as the owner of property abutting on Laurel Street and on the park, South Bound Railroad v. Burton, 67 S.C. 515, 46 S.E. 340; Miller et al. v. City of Columbia, supra. They are entitled to be heard on the legality of the acts which will result in the alleged destruction of their residence.

But the real question in this controversy is, do the statutes relied upon authorize the United States to condemn lands owned by the State and dedicated to a prior public use.

The pertinent portions of the statutes involved in this controversy are as follows:

The Act of August 1, 1888, 40 U.S.C.A. § 257, is as follows: "In every case in which the Secretary of the Treasury or any other officer of the Government has been or shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so. And the United States district courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this section and section 258 of this title, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the Department of Justice."

The Act of June 28, 1941, Public Law 137, 77th Congress, Section 201, 55 Stat. 361, 42 U.S.C.A. § 1531, is as follows: "It is hereby declared to be the policy of this title to provide means by which public works may be acquired, maintained, and operated in the areas described in section 202. As used in this title, the term 'public work' means any facility necessary for carrying on community life substantially expanded by the national-defense program, but the activities authorized under this title shall be devoted primarily to schools, waterworks, sewers, sewage, garbage and refuse disposal facilities, public sanitary facilities, works for the treatment and purification of water, hospitals and other places for the care of the sick, *recreational facilities*, and streets and access roads." (Emphasis added.)

The Act of June 28, 1941, Public Law 137, 77th Congress, Section 202, 42 U.S.C.A. § 1532, is as follows: "Whenever the President finds that in any area or locality an acute shortage of public works or equipment for public works necessary to the health, safety, or welfare of persons engaged in national-defense activities exists or impends which would impede national-defense activities, and that such public works or equipment cannot otherwise be provided when needed, or could not be provided without the imposition of an increased excessive tax burden or an unusual or excessive increase in the debt limit of the taxing or borrowing authority in which such shortage exists, the Federal Works Administrator is authorized, with the approval of the President, in order to relieve such shortage—

"(a) *To acquire,* prior to the approval of title by the Attorney General if necessary (without regard to sections 1136, as amended, and 3709 of the Revised Statutes), improved or unimproved lands or interests in lands by purchase, donation, exchange, lease (without regard to section 322 of the Act of June 30, 1932 (47 Stat. 412), as amended, the Act of March 3, 1877 (19 Stat. 370), or any time limit on the availability of funds for the payment of rent), *or condemnation* (including proceedings under the Acts of August 1, 1888 (25 Stat. 357), March 1, 1929 (45 Stat. 1415), and February 26, 1931 (46 Stat. 1421), for such public works.

"(b) By contract or otherwise (without regard to sections 1136, as amended, and 3709 of the Revised Statutes, section 322 of the Act of June 30, 1932 (47 Stat. 412), or any Federal, State, or municipal laws, ordinances, rules, or regulations relating to plans and specifications or forms of contract, the approval thereof or the submission of estimates therefor), prior to the approval of title by the Attorney General if necessary, to plan, design, construct, remodel, extend, repair, or lease public works, and to demolish structures, build-

ings, and improvements, on lands or interests in lands acquired under the provisions of subsection (a) hereof or on other lands of the United States which may be available (transfers of which for this purpose by the Federal agency having jurisdiction thereof are hereby authorized notwithstanding any other provisions of law), provide proper approaches thereto, utilities, and transportation facilities, and procure necessary materials, supplies, articles, equipment, and machinery, *and do all things in connection therewith to carry out the purposes of this title.*" (Emphasis added.)

40 U.S.C.A. § 258a is as follows: "In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. * * *

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, *title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; * * *.*" (Emphasis added.)

40 U.S.C.A. § 258b is as follows: "No appeal in any cause under section 258 of this title nor any bond or undertaking given therein shall operate to *prevent or delay the vesting of title to such lands in the United States.*" (Emphasis added.)

40 U.S.C.A. § 258d is as follows: "The right to take possession and title in advance of final judgment in condemnation proceedings as provided by section 258a of this title *shall be in addition to any right, power, or authority conferred by the laws of the United States or those of any State or Territory under which such proceedings may be conducted, and shall not be construed as abrogating, limiting, or modifying any such right, power, or authority.*" (Emphasis added.)

50 U.S.C.A. § 171 is as follows: "The Secretary of War may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of *any land,* temporary use thereof or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of *works* for fortifications, coast defenses, *military training camps,* and for the construction and operation of plants for the production of nitrate and other compounds and the manufacture of explosives and other munitions of war and for the development and transmission of power for the operations of such plants; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted. * * * And provided further, That when such property is acquired in time of war, or the imminence thereof, upon the filing of the petition for the condemnation of any land, temporary use thereof or other interest therein or right pertaining thereto to be acquired for any of the purposes aforesaid, *immediate possession thereof may be taken to the extent of the interest to be acquired and the lands may be occupied and used for military purposes,* and the provision of section 175 of this title, providing that no public money shall be expended upon such land until the written opinion of the Attorney General shall be had in favor of the validity of the title, nor until the consent of the legislature of the State in which the land is located has been given, shall be, and the same are hereby, suspended during the period of the existing emergency." (Emphasis added.)

It is not contended by the intervenors in this case that Congress does not have the power to enact legislation for the purpose of condemning state property, or that the foregoing statutory provisions are insufficient to authorize the condemnation of any private property that the Secretary of War may have selected for the erection of a recreational building, but that the provisions thereof are not specific enough to permit the taking of property belonging to the State dedicated to a prior public use. They contend that the part of this property belonging to the State of South Car-

olina, and dedicated to a prior public use cannot be taken by the Federal Government for another public use except by virtue of specific legislation which authorizes it to be done in express words or by necessary implication.

■ The general rule that property devoted to one public use may not be taken for another public use unless the statute by express language or by necessary implication shows that such property should be taken, "is really only a rule of construction of the terms of the grant of the power sought to be exercised; and * * * has been applied principally, if not solely, in interpreting the scope of the power to condemn given by a State to one of its corporate creatures. Where a corporation given the power to condemn property for its uses seeks to condemn property of another public service corporation, the question of construction of the grant of power to the former arises, to determine whether the Legislature has expressly or by necessary implication included the power to condemn the property of the latter corporation, already devoted to a public use." United States v. Certain Parcels of Land, D.C., 30 F.Supp. 372, 378. In passing upon a question similar to the one I have under consideration, the Court in the foregoing case said: "In my opinion the rule relied on by the intervenors is not applicable to this case. We are not here dealing with a question of interpretation of the powers of two separate corporations under the laws of a particular State, but with the sovereign and paramount authority of the federal government to acquire property necessary or suitable for a post office, which is clearly within the express grant of power given by the Federal Constitution. There is no question of interpretation of a statute necessary because Congress has very clearly delegated to the Secretary of the Treasury the power to select the sites for post offices within the several States." In that case the title to the property was vested in the County Commissioners of Caroline County, Maryland. The County Commissioners were made parties but interposed no objection to the condemnation. The objection was by certain owners of the property on the public streets in the town of Denton facing the Court House square. The Court in that case was construing the provisions of the Act of Congress of May 25, 1926, ch. 380, § 1, 44 Stat. 630, 40 U.S.C.A. § 341, in which Congress authorized and directed the Secretary of the Treasury to acquire by purchase, condemnation or otherwise, such sites as he may deem necessary for post offices and other federal buildings in the States, territories and possessions of the United States. Acting under this statute the Secretary of the Treasury determined to acquire the land in question in that case by condemnation, and the proceeding, therefore, was brought in the district court under the federal condemnation statute. 40 U.S.C.A. §§ 257, 258.

In this case, in accordance with the foregoing Acts of Congress, approved October 14, 1940, Public No. 849, 76th Congress, as amended, by the Acts of Congress approved April 29, 1941, Public Law 42, 77th Congress, and June 28, 1941, Public Law 137, 77th Congress, the President of the United States has found and determined that in the area in and about Columbia, Richland County, South Carolina, an acute shortage of recreational facilities to maintain the morale of the armed forces of the United States and of persons employed in national defense industries exists or impends, which will impede national defense activities. Pursuant to that finding and under the authority in him vested by said Acts of Congress, and pursuant to the authority delegated to the Secretary of War by the Administrator of the Federal Works Agency by letter dated September 30, 1941, the Secretary of War has selected the land in question as a site for the establishment of a recreational center, and has found and determined that it is necessary and advantageous to the interests of the United States to acquire the land in question for said use by condemnation under judicial process.

■ It is my opinion that there is likewise no question here of the interpretation of a statute necessary because Congress has delegated to the President and the Federal Works Administrator, and through him to the Secretary of War, the power to select sites for such recreational buildings as described in this controversy. To hold otherwise would be to say that the United States has no authority to condemn property for military purposes, because a State highway runs through a part of the land sought to be condemned, and to state that the United States, before proceeding further upon this project, the construction of which has already progressed to a very material state, must go

back to Congress and go through the uncertainty and delay of attempting to obtain additional legislation. The following language from the case of United States v. City of Tiffin, C.C., 190 F. 279, 281, applicable to the acquisition of a post office site, seems most applicable to the condemnation of land for military purposes during the present emergency, "Assuming the rule is applicable, then the government, after Congress had passed the necessary general legislation to establish a post office in this particular city, and the Secretary of the Treasury had exercised the semijudicial function cast upon him by law to determine the necessity of any particular plot of ground and had selected this strip of alley, the maintenance of which is of very slight consequence to the city of Tiffin at large, would be compelled to await a session of Congress and reopen the whole matter for the purpose of getting an act passed specially designating this alley as one of the component parts of the site. It seems to us the statement of that proposition is all that is necessary to prove that the sovereign power ought not to be so hampered, and that the rule, having its birth in a jealousy for the rights of sovereignty, should not be extended to embarrass the object of its service."

Counsel for petitioners, however, rely upon the decision in United States v. Southern Power Co., 4 Cir., 31 F.2d 852, 856, where the Court said: "It is true that this rule is ordinarily applied in grants of power to public service corporations, and not where the power is being exercised by the state itself for its immediate purposes. United States v. City of Tiffin (C.C.) 190 F. 279. But it is based, not upon any lack of power upon the part of the government, but upon the presumed intention of the Legislature, and should be held to apply in condemnation proceedings, even by the state itself, *where the prior public use could not reasonably interfere with the purpose for which condemnation is authorized."*

Answering this same contention, Judge Chesnut in the case of United States v. Certain Parcels of Land, supra, said: "I have italicized the concluding phrase because from the context it will be noted that it constitutes a significant limitation upon the prior part of the sentence, as a careful examination of the whole case will clearly show. The court was not there dealing with a case where the power of condemnation was directly resisted, but was rather concerned with what effect a prior condemnation, under congressional power to acquire lands for forestry purposes, had upon an existing right of way for power lines therethrough. Under the particular facts, arising out of prior negotiations between the contending parties, it was held among other things that it would not be equitable to find that the condemnation had destroyed the right of way for the power line. We are dealing here with an entirely different situation. It would certainly interfere with the ordinary activities of the post office department if the many sites for post offices chosen by the Secretary, which doubtless often, as in the case of the City of Tiffin, supra, require the acquisition of some publicly held property, could not be acquired by the government by condemnation when necessary except after the delay incident to obtaining a special and specific Act of Congress for the taking of the particular public property. To avoid any such delay Congress has given the Secretary power to select the sites, and there is no need for construction of the language used."

But petitioning intervenors contend that there is a vital difference between the relationship of a sovereign State to the United States and the relationship between a political subdivision of a State and the United States. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Board of Commissioners v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318; Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; Carey v. South Dakota, 250 U.S. 118, 39 S.Ct. 403, 63 L.Ed. 886; Illinois Cent. R. R. Co. v. Public Utilities Comm., 245 U.S. 493, 38 S.Ct. 170, 62 L. Ed. 425. And argues that this is necessarily so in that a State is sovereign in all respects except in so far as that State has in the Constitution delegated portions of its sovereignty to the Federal Government. But the general rule relied upon by the petitioners makes no distinction between the condemnation of property owned by the State and that owned by a municipality. Furthermore, whenever the constitutional powers of the Federal Government and those of the State come into conflict, the latter must yield. Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed.

511. The fact that land is owned by a State is no barrier to its condemnation by the United States; a State cannot prevent the exercise of eminent domain of the Federal Government; and the fact that the condemnation of the State's property will interfere with the State's own program for development and conservation is likewise of no avail, that program must bow before the superior power of the Congress. Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487. As was aptly said in the case of United States v. City of Tiffin, C.C., 190 F. 279, 280, "The United States has paramount authority in the matter of taking any property within its borders for those public uses which are within the constitutional reservations to the general government. Its rights in this behalf are inherent in its sovereignty, and are prior to constitutions and statutes. The Constitution does not operate to create this right, but only to limit its exercise to certain objects. The several states for their own administrative purposes within their own borders hold authority of the same generally broad and extraconstitutional nature. The principle of strict construction of either the nature or extent of this right applies to neither sovereignty for the reason that such right is a very part of the sovereignty itself, existing from the beginning."

The property in question consists of unimproved portions of streets in the City of Columbia. It has been *dedicated* to a prior public purpose, but has never been, and probably never will be, *devoted* to a public use. The rule relied upon, as I understand it, applies to property *devoted* to a prior public use, and not to property *dedicated* to a prior public use. I do not believe that the rule should be extended to cover a situation disclosed by the facts in this case, and it is my opinion that the Acts of Congress relied upon confer upon the United States the power to condemn this property in furtherance of the urgent defense program.

If the United States is to be even delayed in the construction of this essential facility or like facilities, notwithstanding the fact that it is in possession under a declaration of taking and the judgment entered thereon, the very purpose for which the declaration of taking statute was designed, i.e., to enable the United States to proceed unhampered by litigated matters, will have been defeated and the object of the delegation of discretionary powers to the Secretary of War will have been thwarted. No reported case has been found in which the Government, while proceeding under a Declaration of Taking, was so hampered or restrained, nor do I know of any instance in which any restraint was so imposed. It is my opinion that it was the intention of Congress that the declaration of taking should be final and that litigation should be over the proceeds and not over the possession of the lands.

For the foregoing reasons, the motion of the intervenors to vacate the order vesting title in the United States, and to dismiss the condemnation proceedings in this cause should be denied.

Counsel may present an appropriate order.