**UNITED STATES v. 1,997.66 ACRES OF LAND, MORE OR LESS, IN POLK COUNTY, IOWA, et al.**

No. 12483.

Circuit Court of Appeals, Eighth Circuit.

July 7, 1943.

Rehearing Denied Aug. 13, 1943.

Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Maurice F. Donegan, U. S. Atty., of Davenport, Iowa, Daniel F. Steck, Sp. Asst. to the Atty. Gen., and S. Billingsley Hill, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

Hallagan, Fountain, Steward & Cless and P. H. Cless, all of Des Moines, Iowa, for appellee W. J. Porter and others.

Lappen & Carlson and Eskil C. Carlson, all of Des Moines, Iowa, for appellee John E. Lundstrom and others.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Three questions under the Declaration of Taking Act of February 26, 1931, 46 Stat. 1421, 1422, 40 U.S.C.A. §§ 258a–258e, are here involved.

The first is whether it is contemplated under the Act that the United States shall have any right to amend the declaration of taking filed in a condemnation proceeding, for the purpose of reducing an erroneous estimate of just compensation for the land taken, and to permit the Government to withdraw the excess of the cash deposited over the revised estimate.

The second is whether, if it is contemplated under the Act that such right shall exist in the United States, the district court has a discretion to refuse to allow the Government thus to revise its compensation estimate and to withdraw the deposit ex- cess, where the officer or authority, empowered by law to acquire the land through condemnation, clearly is acting in good faith and has certified that the amendment and revision are being made because appraisal information obtained subsequent to the filing of the declaration of taking has demonstrated that the original estimate of just compensation is inaccurate.

The third is whether, where the district court in such a situation has refused to allow the Government to amend and reduce its compensation estimate and to make a withdrawal of the deposit difference, but has withheld payment to the landowner of the excess over the revised estimate, and the final award on a trial of the proceeding exceeds the amount of the revised estimate, the Government properly is chargeable with interest on the difference between the final award and the revised estimate, or on that between such award and the original estimate.

The questions arise on an appeal taken by the United States, in a condemnation proceeding caused to be instituted by the Secretary of War, to acquire a site for an ordnance testing area near Des Moines, Iowa. Congress had duly appropriated the funds for acquiring the land. A declaration of taking signed by the Secretary was filed in the proceeding, stating that the gross sum of money estimated by him to be just compensation for all the land taken was $208,080. This amount was deposited in the registry of the court. The total land involved was 1,997.66 acres, in a number of separate tracts and ownerships, and a just-compensation estimate or allocation for each parcel was accordingly contained in the declaration of taking.

Before any part of the money had been paid out to the respective landowners, and before there had been any attempt to obtain possession of the property, the Government sought to file an amended declaration of taking, changing the estimates of just compensation which had been made for a number of the tracts. Some of the estimates were reduced and some were increased. The gross amount of the revised estimates, however, was only $171,575, leaving a difference of $36,505 between the original and the revised estimates. The Government asked leave to withdraw this excess from the registry of the court. The Secretary had certified in the amended declaration of taking that "appraisal information obtained subsequent

to the filing of the original declaration of taking demonstrates that the amounts deposited as estimated compensation are inaccurate."

There were some errors in description and in the names of owners of the property, which the amended declaration of taking sought also to correct. The court allowed the amended declaration of taking to be filed for the purpose of correcting the errors in description and ownership, but refused to permit it to have any legal effect to revise the compensation estimates in the original declaration. The court did, however, withhold payment of any difference between the two estimates from the landowners, and retained the excess in the registry of the court. On the tracts where the ultimate award by the jury exceeded the amount that had been paid out to the landowners, the court in the final judgment charged the Government with interest on the difference between the verdict and the original or the amended estimate, whichever was the lower.

The appeal here is from the judgments entered in connection with eight tracts of land, referred to in the proceedings as parcels numbers 7, 8, 14, 16, 19, 69, 70 and 71. No question is raised with respect to the jury's verdicts, but the Government challenges the construction made by the lower court of the Declaration of Taking Act, in refusing to allow any amendment of the estimates of just compensation stated in the declaration of taking, and the relation of this construction to the amount of interest with which the Government was charged in the judgments.

■ The two principal purposes of Congress, in making provision in the Declaration of Taking Act for the estimating of just compensation and the depositing of the amount thereof in court, undoubtedly were to minimize the interest burden of the Government in a condemnation proceeding, and to alleviate the temporary hardship to the landowner and the occupant from the immediate taking and deprivation of possession. United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. —; Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959.

The number and the scope of the emergency condemnations, to which the Government has had to resort in acquiring necessary properties for the present war effort, have given to the deposit and interest aspect of such proceedings a compelling significance. Since the attack upon Pearl Harbor, governmental authorities have deemed it necessary to make deposits in court, under declarations of taking, of some 75 million dollars of public funds, in order to acquire immediate title and possession of lands in condemnation. The avoidance of a six per cent interest load upon the huge sums thus involved manifestly is a matter of some concern to the taxpaying public. So, too, if the deposits made have been excessive, through error or inaccuracy in the estimating of just compensation, the public has a similar interest in having the error corrected and the excess funds returned to the Government, so they will not remain burdensomely idle but may be put to other necessary uses.

It is not unnatural in this emergency situation that exigent takings have had to be made where the procurable value-data was unavoidably imperfect or incomplete, and that cautionary appraisal re-checking should thereafter demonstrate that some of the original estimates of just compensation were inadvertently incorrect. If the estimate has been too low, fairness to the landowner obviously suggests that the estimate and deposit ought to be increased. If the estimate has been too high, fairness to the public correlatively suggests that the estimate and deposit should be permitted to be reduced.

■ It would thus seem that, as a matter of fairness and sound practicality, the right should exist in the Government to amend its declaration of taking, for the purpose of correcting an erroneous estimate of just compensation and of enabling the Government to withdraw any excess of public funds deposited, in order to apply them to other uses and to prevent waste. The Declaration of Taking Act ought therefore to be construed as being consistent with the existence of such a right, unless this construction will do violence to the legislative language or to some substantive right of the landowner, created by the Act or otherwise existing.

■ There can be no violence done by such a construction to any substantive right of the landowner existing outside the Act itself. Except as some fixed right may have been intended to be created by the Act itself,—which question will be presently considered—all that is fundamentally involved is the landowner's basic right of not being

deprived of his property without ultimate just compensation. In a constitutional sense, that right can in no way be claimed to be infringed by the mere fact that ascertainment and payment of the amount of just compensation have not been made before the property is taken. Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 21, 22, 60 S.Ct. 413, 415, 84 L.Ed. 554; George Moore Ice Cream Co., Inc., v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 623, 77 L.Ed. 1265; Hurley v. Kincaid, 285 U.S. 95, 104, 105, 52 S.Ct. 267, 269, 76 L.Ed. 637; Commercial Station Post Office, Inc., v. United States, 8 Cir., 48 F.2d 183. The Act here facilitates the vindication of the landowner's basic right by providing that, without regard to the amount of the estimate and deposit in the proceeding, the right to just compensation "shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein * * *." 46 Stat. 1421, 40 U.S.C.A. § 258a.

We turn then to a consideration of whether the Act itself was intended to create some fixed or absolute right in favor of the landowner which would be violated by a construction allowing the filing of an amended compensation estimate to correct an inadvertent error or inaccuracy in appraisal. The question is one upon which apparently, up to the present time, no appellate court has directly passed. One district court has held that, as a matter of public interest, no such fixed right was intended to be created by the Act as would deprive the court of the power to allow the original compensation estimate to be amended and the deposit excess to be withdrawn. United States v. Certain Land in Centerline, D.C.E.D.Mich., 47 F.Supp. 320. Other district courts, implicationally at least, have pointed to an opposite conclusion. United States v. 266.25 Acres of Land in Charleston County, D.C.E.D.S.C., 43 F.Supp. 633; United States v. 3.08 Acres of Land, More or Less, in North River, Borough of Manhattan, D.C.S.D.N.Y., 46 F.Supp. 64; United States v. 17,280 Acres of Land, More or Less, Situated in Saunders County, D.C.Neb., 47 F.Supp. 267.

■ The language and purpose of the Act seem to us clearly to indicate that, insofar as the landowner was concerned, Congress intended to grant a provisional alleviation only to the extent that the acquiring officer or authority honestly believed that the estimate and deposit would fairly represent the amount of just compensation to which the owner would be ultimately entitled. Where, before payment has been made to the landowner, the acquiring officer or authority discovers that a mistake has occurred, and causes an amended estimate to be made, and certifies to the district court that the original estimate has been ascertained to be excessive, such original estimate can hardly soundly be said, for payment purposes to the landowner, to represent "the sum of money estimated by said acquiring authority to be just compensation for the land taken", within the spirit of the Act. A payment to the landowner, in such a situation, of the amount of the erroneous estimate would not tend to serve the general aim and policy of the statute. It would be an unreasonable assumption that Congress intended to allow any interim or provisional action to leave open the possibility of a waste of public funds, because an administrative error had occurred. The Supreme Court has specifically recognized this hypothesis in United States v. Miller, supra, in holding, in a situation of practicable comparability, that any excess in the provisional payment made to a landowner over the final award is subject to a judgment of restitution, even though the Act is silent on such a situation.

■ We have not failed to observe the language in section 1 of the Act, 46 Stat. 1421, 40 U.S.C.A. § 258a, that "Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States * * *." But, when it is borne in mind, as we have already pointed out, that the estimate and deposit are in no way determinative or restrictive of the landowner's final rights, and that they constitute fundamentally mere facilitating, alleviating and interest-saving incidents in the condemnation proceeding, there is in this language nothing that can soundly be regarded as constituting a barrier to the indicated construction of the Act.

If the language of the Act were to be regarded as creating an unvariable status,

so that the original estimate and deposit could not be permitted to be amended or altered, the very purpose and policy of the statute could thereby be partially defeated. We doubt not that if the acquiring officer or authority discovered that the estimate made was too low and that it did not in his revised judgment represent a fair approach to just compensation, there was no intention on the part of Congress to prohibit an increase in the amount of the estimate and deposit. Correlatively, if it were similarly discovered that the estimate and deposit were too high, and the acquiring officer or authority in good faith certified that an error had been made and requested leave to file an amended estimate before payment had been made to the landowner, we believe equally that Congress intended, as a matter of justice and public interest, that the original estimate should no longer be regarded as constituting "the sum of money estimated by said acquiring authority to be just compensation for the land taken", but should be treated as having been superseded, for the practical and remedial purposes of the Act, by the amended estimate.

It would seem to us to be a travesty upon the fundamental concept of legislative, administrative and judicial functioning if, for example, a declaration of taking, through some clerical error, should contain a provisional compensation estimate of $100,000, where an actual estimate of only $10,000 had been intended, and it were to be held that, under the language of the Act, such a right and status had been created that there was an impotency to remedy the situation, by amending the declaration of tak-

ing to correct the compensation estimate and to permit a withdrawal of the deposit excess made pursuant thereto. Any other error in the amount of the compensation estimate, such as that which is here involved, would represent only a difference in kind or degree to that in the illustration used and ought logically, in the purpose which the statute was intended to serve, to be subject to the application of the same basic, protective principle.

■ We accordingly hold that there is nothing in the Declaration of Taking Act, inconsistent with an exercise of the implied, inherent authority of the district court to allow the United States to amend the declaration of taking filed in a condemnation proceeding, for the purpose of reducing (or increasing) an erroneous estimate of just compensation for the land taken, and to permit the Government to withdraw the excess of the cash deposited over the revised estimate. This construction merely seeks, by reasonable and sound implication, to give practical effect to the fundamental purposes and policies of the Act, on a point on which the Act itself is silent,[1] in a manner that does no violence to the basic or substantive rights that are involved in the proceeding. Cf. Thompson v. Glover, 8 Cir., 94 F.2d 544; Baxter v. McGee, 8 Cir., 82 F.2d 695; Wilson v. United States, 8 Cir., 77 F.2d 236; People of Puerto Rico v. Shell Co. (P.R.), Ltd., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235; Fleischmann Construction Co. v. United States to Use of Forsberg, 270 U.S. 349, 46 S.Ct. 284, 70 L. Ed. 624.

■ The next consideration is whether the district court has a discretion to re-

---

[1] In a corresponding declaration of taking statute applicable to the District of Columbia, Act of March 1, 1929, c. 416, 45 Stat. 1415, 40 U.S.C.A. § 361 et seq., there is a provision, 45 Stat. 1421, 40 U.S.C.A. § 383, that "In all proceedings under this chapter the court shall have power at any stage of the proceeding to allow amendments in form or substance in any petition, citation, summons, process, answer, *declaration of taking*, order, verdict, or other proceeding, including amendment in the description of the lands sought to be condemned, whenever such amendment will not impair the substantial rights of any party in interest." (Emphasis added.) This is, of course, a mere legislative declaration of existent, inherent judicial power, but the inclusion of a declaration of tak-

ing in its terms is confirmatory that Congress did not intend that the mere filing of a declaration of taking in a condemnation proceeding should result in the creation of such a fixed or unvariable status with respect to the estimate and deposit that there could be no correction of an error which had occurred in them.

There is, of course, also a general statute, R.S. § 954, 28 U.S.C.A. § 777, derived from the Judiciary Act of 1789, 1 Stat. 91, which is declaratory of the inherent power of the federal courts and provides that the court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

fuse to allow the Government thus to revise its compensation estimate and to withdraw the deposit excess, where an error has been made. It may be conceded that formal leave of court to file an amended or revised compensation estimate may be required to be obtained, as a matter of orderly procedure, under R.S. § 954, 28 U.S.C.A. § 777. It may further be conceded that under certain circumstances such leave may perhaps rightfully be refused. Thus, if the deposit has already been paid. out to the landowner, any attempt to reduce the estimate would ordinarily serve no useful purpose. So, too, if it should appear that the acquiring officer or authority is not acting in good faith, it may be that the court can properly refuse to allow the revised estimate to be filed or given effect as an amendment to the declaration of taking.

■ ■ But where the deposit still remains in the registry of the court, and where no question exists as to the good faith of the acquiring officer in seeking to correct an error in his original estimate, there would seem to be no sound discretionary basis, within the purpose and policy of the Act or the implied, inherent power of the court, for refusing to permit the amendment to be made and the excess funds to be withdrawn. Judicial discretion in refusing to allow amendments. to further or protect public rights and interest must be held to have more limited boundaries than the field of general discretion which exists in the incidents of ordinary forensic proceedings. Its testing area ordinarily must be regarded as being co-extensive only with a sound furtherance or protection of the public rights or interest involved, unless the boundaries can reasonably be said to have been extended by a required consideration of possible prejudice to some substantive right of the adverse party. It is the wish of the law and not the will of the judge toward which judicial discretion must always seek to be directed. Cf. Osborn v. United States Bank, 22 U.S. 738, 9 Wheat. 738, 866, 6 L.Ed. 204; Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520.

■ . Here, as we have indicated, there was no substantive right of the landowner involved, to which the court was required or entitled to give consideration in relation to the allowance of the amendment. The court could not govern its action by any personal opinion of whether the judgment of the acquiring officer or authority,

as reflected in either the original or the revised estimate, was good or bad, for that officer or authority had exclusive authority to estimate the amount of provisional just compensation, and his good faith determination of the sum of money thus to be deposited was not subject to judicial review. Lee v. United States, 61 App.D.C. 153, 58 F.2d 879. Nor could the court allow its ruling to be controlled by any conjecture on the possible ultimate award, since the purpose of the Declaration of Taking Act was not to create a dormant fund as protective security for the payment of the final judgment. And, lastly, in the accomplishment of the statutory purpose of interest saving to the public and provisional alleviation to the landowner, whatever the jury's verdict might subsequently prove to be, it could not be claimed to constitute a retrospective justification for a previous refusal to permit the amended estimate to be given effect and the excess deposit to be withdrawn. Where, as here, no substantive right of the landowner could possibly be affected, a refusal to give recognition and furtherance to the clear rights and interest of the public, by the allowance of the amendment sought in the present situation, must be held to be an abuse of judicial discretion.

■ It follows that the district court erred in not allowing and giving effect to the amended compensation estimates and in not permitting a reallocation of the original deposit on the basis thereof and a withdrawal of the cash excess. The Government legally could only be charged interest in the final judgments on the basis of the difference between the amounts of the verdicts and the amended estimates, except that in those cases where the compensation estimate was increased by the amended estimate, the difference between the amount of the original and the amended estimates should bear interest up to the time that the amendment and reallocation were sought to be made.

The judgment in connection with parcels 7, 8, 19, and 70, which was aggregated because of single ownership of the property, but which included a computation of interest, as to one parcel, upon the difference between the jury's verdict and the original compensation estimate, must accordingly be reversed. The judgment in connection with parcel 69 is similarly reversed. The cause will be remanded as to these parcels for the entry of proper deficiency

judgments, with interest computed upon the basis set out above. The judgments in connection with parcels 14 and 71 and parcel 16, in which interest has been computed on the basis of the amended estimate are affirmed.

The erroneous refusal of the trial court to allow the Government to withdraw the cash excess between the original and the amended compensation estimates and the Government's consequent loss of the use of these funds during the litigation period will not, of course, permit us to deprive the landowners of any part of the just compensation to which they are legally entitled for their property, but the situation can only be dealt with here as if the amended estimates had properly been given effect at the time.

Affirmed in part, reversed in part.

STONE, Circuit Judge (dissenting in part).

I concur in the conclusion that the trial court has power to allow amendments to declarations of taking (including revision of estimated damages). The majority opinion finds the power to allow such amendments in the general, inherent power of courts to allow amendments; and with this view I have no difference though I would place it upon the statutory expression of that power stated in Section 777, Title 28 U.S.C.A. As I read the opinion however, the judicial exercise of this inherent power is regarded as so limited that it is an abuse of sound discretion to refuse to allow such amendments of estimates where the good faith of the acquiring officer is not in question. As I see it, the practical effect of such limitation is to hold that, barring bad faith, there is an absolute right to make such amendments. This view is based upon one of the purposes of the Declaration of Taking Act—to hold down interest payments by the Government as a part of the damages. I am unable to accept this limitation upon the usual exercise of judicial discretion in allowance of amendments—whether based upon inherent judicial power or upon Section 777.

The Act (§§ 258a–258e, Title 40 U.S.C.A.) is an additional or supplemental permissive right (§ 258a, § 258d, United States v. 76,800 Acres, etc., D.C.S.D.Ga., 44 F.Supp. 653, 654) given the Government for the main object of speedily acquiring title and possession pending determination of the amount of damages in a regular condemnation proceeding, thus avoiding the delays incident to final termination of such litigation. City of Oakland v. United States, 9 Cir., 124 F.2d 959, 964; United States v. 2,049.85 Acres of Land, D.C.S.D. Tex., 45 F.Supp. 731, 732; United States v. 76,800 Acres, etc., D.C.S.D.Ga., 44 F.Supp. 653, 654; United States v. .8677 Acre, etc., D.C.E.D.S.C., 42 F.Supp. 91, 98. When this right is exercised, the title vests upon the filing of the declaration and the making the deposit (§§ 258a and 258b) and the Court shall fix the time and terms of passing of possession. § 258a. The only issues remaining have to do with ascertainment of the amount and the payment of compensatory damages for the taking. United States v. .8677 Acre, etc., D.C.E.D.S.C., 42 F.Supp. 91, 98. Since the Government can constitutionally take property in advance of ascertainment of damages (Yearsley v. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554), there was no constitutional need for any deposit to enable the Government speedily to establish title and to secure possession. It would have been within the power of Congress to enact that title and right to possession should pass upon the mere filing of a declaration without deposit.

The purposes to be served by the deposit were two. United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. ——. One was to lessen the hardship to the landowner brought about by the sudden deprivation of his property—often his only real estate and his home. This was accomplished by the deposit of an honestly estimated value of his property which he could withdraw on order of the Court. The other was to avoid or lessen interest charges against the Government to the extent of those upon the deposited amount.

The majority opinion, as I read it, is largely, if not entirely, influenced by the purpose of saving interest to the Government in its construction of this right of amendment of the estimate. I am unable to see that this purpose is more important than the other purpose of the Act, to-wit, to protect the difficult position of the unfortunate landowner who will, rather suddenly and without his consent, have his property and home taken from him and his life plans drastically altered. If a balance between these purposes must be made—which I think unnecessary—I would think protection of the landowners was the more important of the two. It can scarcely be

the less weighty. Any change in the amount of deposit would certainly concern and affect the landowner as much as it would the Government. The Government has the exclusive advantage of making the initial estimate and the landowner has no way of compelling an increase thereof no matter how inadequate he may deem it nor how inadequate it may in fact be.[1] It would seem simple justice to allow the landowner to be heard and court to exercise the usual discretion before the deposited estimate could be changed to his detriment.

I appreciate that the officers of the Government might discover that the initial estimate was, in their opinion, incorrect and they might wish to change it. I think they should then have an opportunity to make such change, but I do not think that opportunity should be an absolute right. Section 777 affords such opportunity but at the same time gives the landowner some chance to be heard in connection with a matter affecting his very real interests. Any change in estimate would, obviously, be the result of what the Government officials regarded as additional and more definite information as to value acquired by them after the initial estimate. Such information should not be difficult to present to the trial court. It can hardly be thought that a trial judge would not carefully weigh the reasons for change and be as zealous to protect the Government as to protect the landowner.

Altogether, I can see no necessity, in order to carry out the purposes of the Act, for construing the Act to give, in effect, an absolute right to amend declarations (including estimates and deposits). Therefore, I am constrained to disagree with such construction. Judged by the standard, which seems to me proper, I think no abuse of discretion is shown in denying these amended estimates, and, therefore, that the denial orders should stand.

While what has been heretofore stated expresses my views as to the important issue, yet there is another matter, dependent on this main issue, which must be worked out if I am to state what disposition should, in my judgment, be made of this case. That matter is appellant's contention that even if the Court be not required to accept the amended Declaration of Taking and to reallocate the funds on deposit in accordance therewith, yet it erred in its method of computing interest. What the Court did was to allow interest from August 26, 1941 (date of original deposit) on the deficiency between the respective verdict amounts and the corresponding deposit either in the original or in the amended Declaration deposits, whichever was smaller. Applied to the several parcels, this method resulted as follows. As to parcels 7 and 69, the allowance was based on the original deposits which were smaller than the corresponding amended deposits. As to the other parcels (8, 19, 70, 14, 71 and 16), the allowance was based upon the amended deposits which were smaller than the corresponding original deposits.

I think the Court was right as to parcels 7 and 69 and wrong as to the others. The reasons are (1) the Court denied in toto substitution of the amended deposits, thus leaving the original deposits as the only effective ones before the Court[2]; (2) the Act provides expressly that "interest shall not be allowed on so much thereof as shall have been paid into the Court."

Applying this conclusion to the figures here the results are as follows. Treating parcels 7, 8, 19 and 70 in group, as was done by the Court and not objected to by the parties, interest was allowable on $3,550, being the difference between the verdict amounts ($16,350) and the original deposits ($12,800). Similarly treating parcels 14 and 71 in group, interest was allowable on $40, being the difference between the verdict amounts ($5,000) and the original deposits ($4,960). As to parcel 16, interest was allowable on $383, being the difference between the verdict amount ($17,983) and the original deposit ($17,600). As to parcel 69, interest was allow-

---

[1] It is truly said that the estimate must be in good faith. This implies a right in the landowner to contest an estimate made in bad faith. But of what practical benefit is that right? The entire purpose of the deposit, in so far as he is concerned, is to furnish him an opportunity for getting approximate compensation promptly and before his damages are ascertained and paid. A contest of the good faith as to an estimate would largely, if not entirely, defeat the above purpose. Thus there is no workable relief for the landowner against even a bad faith estimate.

[2] I think the Court had power to allow and to deny any separate parcel deposits sought in the amended Declaration but it denied all thus leaving only the deposits under the original Declaration.

able on $2,200 being the difference between the verdict ($3,000) and the original deposit ($800). As to all, interest dates from August 26, 1941 (date of the original deposit). The fact that smaller amounts were sought or were allowed withdrawn than the corresponding original deposits does not affect the amount subject to interest. The withdrawal provisions of the Act have no connection with the interest provisions.

I think the case should be remanded for modification of the judgments to accord with the above bases for calculation of interest and, when and as so modified, the judgments should be affirmed.