VAN CAMP SEA FOOD CO., Inc., et al. v. DEPARTMENT OF NATURAL RESOURCES OF STATE OF CALIFORNIA et al.

District Court, S. D. California, S. D. January 18, 1929.

John L. Dyer, of Los Angeles, Cal., and M. A. Thomas and B. D. Marx Greene, both of San Francisco, Cal., for plaintiffs.

U. S. Webb, Atty Gen., John L. Flynn, Deputy Atty. Gen., and Eugene D. Bennett and Ralph W. Scott, both of San Francisco, Cal., for defendants.

Before RUDKIN, Circuit Judge, and JAMES and HENNING, District Judges.

RUDKIN, Circuit Judge. The plaintiff Van Camp Sea Food Company is a California corporation, engaged in the business of canning sardines and manufacturing fish meal and fish oil from sardines, at its plant in the city of Los Angeles. The plaintiff Globe Grain & Milling Company is a Cali-

fornia corporation, operating a refining plant near the city of Los Angeles, and is engaged in the manufacture of a food product, sold under the trade-mark "Westola," from fish oil purchased from the sea food company, combined with other vegetable oils. The present suit was instituted by the two corporations against the department of natural resources of the state of California, and a number of state officers, to restrain the execution of a state statute limiting and restricting the use of sardines in reduction plants within the state. The statute, enacted in 1919, with later amendments, confers jurisdiction on the state fish and game commission to regulate and control the fish industry of the state, including fish canneries and fish reduction plants, or any plant where fishery products are manufactured. Section 5 of the act provides that no person, firm, or corporation shall suffer or cause any preventable deterioration or waste of any fish caught or taken in the waters of the state, or brought into the state, and that no person shall use any fish, except fish offal, in a reduction plant, except of the species, in the manner, and to the amount allowed by the act. It is then provided that it shall be lawful for a packer of sardines to take and use in a reduction plant, in each calendar month, sardines to the amount of 25 per cent. of the monthly capacity of the packing plant, such capacity to be determined by the fish and game commission after a hearing. Section 6 declares that the use of any fish, or any part thereof, contrary to the provisions of the act, shall constitute a nuisance, and provides for its abatement by suit. Statutes of 1925, p. 595.

In order to prevent waste of sardines and fishery products, regulations adopted by the fish and game commission provide that every packer of sardines will be required to produce, out of each ton of sardines received during a calendar month, not less than a certain number of cases and cans of sardines, the number varying according to the size and capacity of the cans. The plaintiffs complain of the statutory prohibition against the use of more than 25 per cent. of the sardines received during any calendar month in the reduction plant, and of the regulation prescribing the number of cans and cases that must be produced from each ton of fish, earnestly insisting that they violate the Commerce Clause (article 1, § 8, cl. 3) and the Fourteenth Amendment to the Constitution of the United States.

The power of the states to protect game and fish within their borders by appropriate legislation is now too firmly established to admit of further controversy. Geer v. Connecticut, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793; Ward v. Race Horse, 163 U. S. 504, 16 S. Ct. 1076, 41 L. Ed. 244; Silz v. Hesterberg, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75; Patsone v. Pennsylvania, 232 U. S. 138, 34 S. Ct. 281, 58 L. Ed. 539; Kennedy v. Becker, 241 U. S. 556, 36 S. Ct. 705, 60 L. Ed. 1166; Carey v. South Dakota, 250 U. S. 118, 39 S. Ct. 403, 63 L. Ed. 886; La Coste v. Dept. of Conservation, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437.

In the case last cited, the court said: "The wild animals within its borders are, so far as capable of ownership, owned by the state in its sovereign capacity for the common benefit of all of its people. Because of such ownership, and in the exercise of its police power the state may regulate and control the taking, subsequent use and property rights that may be acquired therein."

Indeed, the power of the state to prohibit the shipment of game lawfully taken within its borders to points without the state, and to prohibit the possession of game within the state, when shipped from points without the state, has repeatedly been recognized by the Supreme Court. And on the argument of this case it was practically conceded that, for a period of about ten years, the decisions to which we have referred were deemed ample warrant for the legislation and regulations now in question, but it is earnestly insisted that the rule established by these decisions was overthrown and annulled by the recent decision of the Supreme Court in Foster-Fountain Packing Co. v. Haydel, decided October 13, 1928, 49 S. Ct. 1, 73 L. Ed. ——. With this contention we are unable to agree. The legislation of the state of Louisiana there involved prohibited the shipment of unshelled shrimp to points without the state, and the court found that this prohibition was a mere subterfuge to bring about the removal of packing and canning industries from the state of Mississippi to the state of Louisiana. The basis for the decision is found in the following paragraph of the opinion: "The facts alleged in the complaint, the details set forth in plaintiffs' affidavits and the provisions of the Act to be restrained show that the conservation of hulls and heads is a feigned and not the real purpose. They support plaintiffs' contention that the purpose of the enactment is to prevent the interstate movement of raw shrimp from the Louisiana marshes to the plants at Biloxi in order through commercial necessity to bring about the removal of the packing and canning in-

dustries from Mississippi to Louisiana. The conditions imposed by the Act upon the interstate movement of the meat and other products of shrimp are not intended and do not operate to conserve them for the use of the people of the State."

The California act is open to no such objection. The plaintiffs frankly concede to the state the right and power to close the fishing season from time to time, or to prohibit fishing altogether; but they contend that the state has failed to do so, and that because of such failure the protection of the interstate commerce clause of the Constitution attaches to the fish as soon as they are taken from the water and reduced to possession. But the fallacy of this argument is made apparent by reference to the opinion of the Supreme Court in Geer v. Connecticut, supra, where the court said: "It was said in the discussion at bar, although it be conceded that the state has an absolute right to control and regulate the killing of game as its judgment deems best in the interests of its people, inasmuch as the state has here chosen to allow the people within her borders to take game, to dispose of it, and thus cause it to become an object of State commerce, as a resulting necessity such property has become the subject of interstate commerce and is hence controlled by the provisions of Article 1, § 8, of the Constitution of the United States. But the errors which this argument involves are manifest. It presupposes that, where the killing of game and its sale within the state is allowed, it thereby becomes commerce in the legal meaning of that word. In view of the authority of the state to affix conditions to the killing and sale of game, predicated, as is this power, on the peculiar nature of such property and its common ownership by all the citizens of the state, it may well be doubted whether commerce is created by an authority given by a state to reduce game within its borders to possession, provided such game be not taken, when killed, without the jurisdiction of the state. The common ownership imports the right to keep the property, if the sovereign so chooses, always within its jurisdiction for every purpose. The qualification which forbids its removal from the state necessarily entered into and formed part of every transaction on the subject, and deprived the mere sale or exchange of these articles of that element of freedom of contract and of full ownership which is an essential attribute of commerce."

So here, the right to take fish in the waters of the state, or to bring them within the state from the high seas or elsewhere, is subject to the qualification that not to exceed 25 per cent. of the fish so taken or brought in shall be used in a reduction plant. We entertain no doubt as to the validity of such restriction on or qualification of the use to be made of the fish, because it tends to their protection and conservation as much as does a limitation on the right to sell game or ship it to points without the state. It may be conceded that some of the language of the court in the Foster-Fountain Case is in apparent conflict with the language quoted from Geer v. Connecticut, supra, and makes plausible the argument that fish or game, when lawfully taken or killed, come under the protection of the commerce clause of the Federal Constitution. But we are convinced that no such result was intended, and that the power to prescribe the use that may be made of game, though lawfully taken or killed, still remains with the states, where the power is exercised in good faith and for purposes of conservation, not for the purpose of evading the commerce clause or other provisions of the Federal Constitution.

It was stipulated at the hearing that a final decree should be entered on the record now before the court. The parties disagree to some extent as to the facts, but such disagreement as exists has no bearing upon the merits of the case. The plaintiffs contend that only 20 per cent. of the fish purchased by the sea food company are taken within the borders of the state, while the defendants contend that 50 per cent. are so taken. But if a substantial part of the fish are taken in the local waters of the state, the state has the right to limit or qualify the use that may be made of fish of the same species brought into the state from the high seas, in order to make effective the restriction on the use of fish taken from its own waters. Union Fishermen's Co-operative Packing Co. v. Shoemaker, 98 Or. 659, 193 P. 476, 194 P. 854; Silz v. Hosterberg, supra.

Again, the plaintiffs contend that more than 25 per cent. of the fish purchased by the sea food company from fishermen are unfit for canning purposes, and that a ton of fish will not produce the required number of cases or cans. But if this be true, it is because the company sees fit to purchase fish unfit for canning, and, if it does so, the fault is its own. The plaintiffs further offered to prove that fish of the same species are taken from the waters of the Pacific Ocean and used in reduction plants in the Province of British Columbia, without limitation or restriction; but the police power of the state of

California is neither curtailed nor enlarged by the legislation of that province.

The temporary restraining order heretofore issued should be dissolved, and the bill of complaint dismissed. It is so ordered.