## FISHER et al. v. BRUCKER et al.
### No. 4013.

District Court, E. D. Michigan, S. D.

June 20, 1930.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiffs.

Wilber M. Brucker, Atty. Gen., and Emerson R. Boyles, Deputy Atty. Gen., for defendants.

Before DENISON, Circuit Judge, and TUTTLE and SIMONS, District Judges.

TUTTLE, District Judge.

This suit, in which the jurisdiction of the court is properly invoked on the grounds both of diversity of citizenship and the presence of a federal question, involves the construction and constitutionality of the Michigan Inheritance Tax Statute, and is now before this court, constituted and sitting pursuant to the provisions of section 380 of title 28 of the United States Code (section 266 of the Judicial Code), on an application for an interlocutory injunction to restrain the enforcement of such statute on the ground of its unconstitutionality, if construed according to the contentions of the defendants. The plaintiffs are Marion H. Fisher, a citizen and resident of New York, and the Union Trust Company of Cleveland, an Ohio corporation, executors and trustees under the will of James W. Packard, deceased; and the defendants are the Attorney General and the

auditor general of Michigan and the Union Trust Company of Detroit (the transfer agent of the Packard Motor Company, hereinafter mentioned), a Michigan corporation, all citizens and residents of Michigan. The material facts are not in dispute, the only contested questions being questions of law.

James W. Packard (hereinafter called the testator) died in the state of New York, while a resident of such state, on March 20, 1928. His will was duly admitted to probate on March 29, 1928, by the Surrogate's Court in that state, which also appointed the plaintiffs as executors under said will. At the time of his death, the testator was not engaged in any business in Michigan and owned no property of any kind within that state, unless his shares of corporate stock hereinafter mentioned, the taxability of whose testamentary transfer is here involved, should be held to have had a situs, for purposes of taxation, in said state, as is asserted by the defendants and denied by the plaintiffs. This stock consisted of 80,000 shares of the capital stock of said Packard Motor Company, a corporation organized and doing business under the laws of Michigan. The certificates evidencing said shares of stock were, at the time of the death of the testator, in his actual possession in the state of New York, where he then had his domicile. By the terms of said will, the testator bequeathed said stock to the plaintiffs as trustees for certain purposes and beneficiaries therein specified. Under the inheritance tax laws of New York, a tax was imposed upon this testamentary transfer of said stock, which tax has been paid by the plaintiffs.

The defendants having asserted the claim of a lien on this stock, to secure payment of the tax claimed by them to be payable, under the Michigan inheritance tax laws, on the aforesaid testamentary transfer thereof, which claim hinders and interferes with the beneficial use and disposal of such stock by the plaintiffs, the latter commenced this suit, seeking to restrain the defendants, temporarily and permanently, from attempting to enforce such claimed lien, from hindering the transfer of said stock, and from attempting to enforce against the plaintiffs, with respect to such stock or the transfer thereof, any of the penalties or other provisions of the Michigan inheritance tax laws, such relief being sought on the grounds that such laws, properly construed, do not impose such a tax, and that, if construed as imposing said tax, they abridge the privileges and immunities of the plaintiffs as citizens of the United States, deprive them of property without due process

of law, and deny them the equal protection of the laws, and are therefore in conflict with the Fourteenth Amendment to the United States Constitution and void. Whether any of these contentions of the plaintiffs are correct, as applied to the circumstances of the present case, is the question presented for consideration.

The applicable provisions of the Michigan Inheritance Tax Statute (Act No. 188 of the Michigan Public Acts of 1899), in effect at the time of the death of the testator, March 20, 1928, and material here, were section 1 (section 14524 of the Michigan Compiled Laws of 1915), as amended by Act No. 257 of the Michigan Public Acts of 1923, and section 18 (section 14541 of the Michigan Compiled Laws of 1915), as amended by Act No. 111 of the Michigan Public Acts of 1925.

Section 1 of the statute, just cited, as so amended, then provided as follows:

"After the passage of this act a tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of one hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, not exempt by law in this state from taxation on real or personal property in the following cases:

"First, When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of this state;

"Second, When the transfer is by will or intestate law of property within the state, and the decedent was a non-resident of the state at the time of his death."

Section 18, just mentioned, as so amended, included a provision that: "Whenever any non-resident shall die leaving property or any interest therein, in this state which has not been duly administered under the laws of this state and it shall be necessary to have the question of the taxation of the transfer thereof determined, such question may be presented and determined upon petition to be filed by the attorney general in any probate court of this state."

After the death of the testator both of the sections of the statute just quoted were amended by the Michigan Legislature, by Act No. 231 of the Public Acts of 1929, approved May 21, 1929, and taking immediate effect. Section 1 was so amended by the addition thereto of the following proviso:

"Provided, however, That no tax shall be imposed in respect of personal property (ex-

cept tangible personal property having an actual situs in this state), if

"(a) The transferor at the time of the transfer was a resident of a state or territory of the United States, or of any foreign country, which at the time of the transfer did not impose a transfer tax or death tax of any character in respect of personal property of residents of this state (except tangible personal property having an actual situs in such state or territory or foreign country), or

"(b) If the laws of the state, territory or country of residence of the transferor at the time of the transfer contained a reciprocal exemption provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property (except tangible personal property having an actual situs therein), provided the state, territory or country of residence of such non-residents allowed a similar exemption to residents of the state, territory or country of residence of such transferor. * * * For the purposes of this section, the term 'tangible personal property' shall be construed to exclude all property commonly classed as intangible personal property, such as money, deposits in banks, mortgages, debts, receivables, shares of stock, bonds, notes, credits, evidences of an interest in property, evidences of debt and like incorporeal personal property."

At the same time, and by the same amendatory act, section 18 of the Inheritance Tax Statute was amended by the insertion therein of the following provision: "No proceedings in probate court shall be required and no inheritance tax shall hereafter be fixed and determined or collected, upon the estate of a non-resident decedent, or on the beneficiaries thereof, if such estate does not include any tangible assets, real or personal, located in the state of Michigan, and if at the time of the death of such non-resident decedent, whether occurring before or after the enactment of this section as amended, the laws of the state of his domicile contained a provision granting exemption from transfer or death taxes on intangible personal property owned by non-residents of that state, either absolutely or on the basis of reciprocity, (as defined in section one of this act); and in all such cases the attorney general and the auditor general shall, as herein provided, on application of the representative of such non-resident estate, issue to such non-resident estate all waivers and consents which may be necessary to permit the immediate release, delivery and transfer to or by such non-resi-

dent estate of all intangible personal property within the state of Michigan."

The estate of the nonresident decedent here involved does not include any tangible assets located in Michigan, and, at the time of the death of such decedent the laws of New York, the state of his domicile, contained provisions granting exemption from transfer or death taxes on intangible personal property, such as the shares of corporate stock here in question, owned by nonresidents of New York, on the basis of reciprocity as defined by section 1 of the Michigan Inheritance Tax Statute, as thus amended in 1929.

It will be noted that by the statutory provisions in effect at the death of the testator the tax imposed upon testamentary transfers by a nonresident of the state of Michigan was expressly limited to transfers of property "within" that state. It is urged by the plaintiffs that those provisions did not impose a tax on the transfer here involved, as the property so transferred was not "within" the state of Michigan, within the meaning of such statute. It is further insisted, on their behalf, that even if, at that time, such property could have been properly held to have a legal situs, for purposes of taxation, in Michigan and, therefore, to be in that state for such purposes, yet that statute must be construed as having been amended, retroactively and as of the time of the death of this decedent, by the amendment of 1929, so that the imposition or collection of any inheritance tax which might otherwise have been theretofore payable on this transfer has now been removed. Plaintiffs also earnestly contend that, if this amendment to such statute be interpreted as taking effect only prospectively from the date of such amendment, so that it does not affect the taxability of the transfer here involved, the statute relied on by the defendants is unconstitutional on various grounds urged, including claimed double taxation under what is said by plaintiffs to be the rule announced by the United States Supreme Court in Farmers' Loan & Trust Company v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, decided January 6, 1930. All of these contentions are disputed by the defendants.

It is a familiar rule that a statute purporting to impose a tax should be strictly construed and doubts concerning its proper interpretation should be resolved in favor of the taxpayer. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547. In

the language of the Supreme Court in the case last cited: "In statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer."

■ It is an equally well-settled rule of statutory construction that a statute should be construed, if fairly possible, so as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts concerning its constitutionality. United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836; Carey v. South Dakota, 250 U. S. 118, 39 S. Ct. 403, 404, 63 L. Ed. 886; Bratton v. Chandler, 260 U. S. 110, 43 S. Ct. 43, 67 L. Ed. 157; Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906; Routzahn v. Tyroler, 36 F. (2d) 208 (C. C. A. 6). As was said by the Supreme Court in Carey v. South Dakota, supra: "Where a statute is reasonably susceptible of two interpretations, by one of which it would be clearly constitutional and by the other of which its constitutionality would be doubtful, the former construction should be adopted."

■ Whether the amendatory statute under consideration is merely prospective in its operation, affecting only transfers made after its enactment in 1929, or is retroactive in effect, and so applicable to a transfer occurring before such enactment, depends upon the proper construction of such statute. An examination of its provisions, bearing in mind that the interpretation thereof, as inapplicable to the transfer here involved, would subject it to serious doubts as to its constitutionality which would otherwise not arise, results in our conclusion that it should be construed as applicable to the present transfer and to the collectibility of the tax claimed, by the defendants, to be payable on such transfer. It is to be noted that this amendment provides not only that "no tax shall be imposed" in respect of the transfer therein mentioned, but also that "no inheritance tax shall hereafter be * * * collected" upon such transfer. Whether or not such a tax had been "imposed" upon the present transfer prior to the enactment of this amendment, and even assuming that, if the amendment had referred only to the imposition, as distinguished from the collection, of such tax, the retroactive character of such amendment would have been open to more serious ques-

tion, we think it clear that, as the expressed prohibition of the amendatory act specifically refers also to the collection of such tax, it is applicable to a case where, as here, such tax has not yet been "collected." Finally, the amending act expressly and unequivocally prohibits the imposition or collection of such tax upon such transfer "if at the time of the death of such nonresident decedent, whether occurring before or after the enactment of this section as amended," the laws of the state of his domicile contain the reciprocal exemption provisions mentioned. We have no doubt that these amendatory provisions were intended to be, and should be construed as, applicable to the present tax in question, and that the contention of the defendants to the contrary cannot be sustained. There is, therefore, no occasion to determine whether the statute, before this amendment, was open to any of the constitutional objections urged.

■ Although the point has not been raised by any of the parties, we deem it proper to notice for discussion the question whether the three-judge court, convened under the applicable statute, may decide the nonconstitutional questions, without deciding the constitutional questions, raised by the bill and application for interlocutory injunction herein; especially in view of the recent decision of the Supreme Court, in Pittsburgh & West Virginia Railway Co. v. United States, 50 S. Ct. 378, 379, 74 L. Ed. 980 (decided May 19, 1930), holding that the jurisdiction of the three-judge court there required by the Urgent Deficiencies Act (title 28, section 47, United States Code), applicable to suits to enjoin the enforcement of orders of the Interstate Commerce Commission, was limited to the subject-matter specially mentioned in such statute, and that such court could not consider questions not incidental to such a suit. The Supreme Court said, in effect, that a suit to set aside an order of the Interstate Commerce Commission is a special statutory proceeding not invoking nor involving the general equitable jurisdiction of a federal court, but narrowly confined to the sole purpose of annulling such an order of the Commission, and that therefore an application for injunctive relief based upon grounds other than the invalidity of such an order "was not properly joined in this suit" and "may not be included in a bill under the Urgent Deficiencies Act to set aside an order of the Interstate Commerce Commission," but that "relief of that character may be had only in a suit invoking the plenary equity jurisdiction of the District Court."

In the present case, however, the right of the plaintiff to maintain the suit is not based, nor dependent, on a special statutory grant of limited jurisdiction, but the bill was properly filed for the usual injunctive relief, under the general equitable jurisdiction of a federal district court in equity. It is true that, as one of the grounds for such relief was the alleged unconstitutionality of a state statute under the federal Constitution, and as an interlocutory injunction was sought to restrain the enforcement of such statute on such ground, the requirements of section 266 of the Judicial Code made it necessary that the court consist of three judges, both for the hearing on such application and for the final hearing. This increase, however, in the number of the members of the district court thus required does not affect the power of such court, having properly acquired jurisdiction, to consider and dispose of all questions involved in the suit. Louisville & Nashville Railroad Co. v. Garrett, 231 U. S. 298, 302, 34 S. Ct. 48, 50, 58 L. Ed. 229; Union Light, Heat & Power Co. v. Railroad Commission (D. C.) 17 F.(2d) 143, 145; Firemen's Insurance Co. v. Beha (D. C.) 30 F. (2d) 539. This question was settled by the Supreme Court in Louisville & Nashville Railroad Co. v. Garrett, supra, where the court, speaking through Mr. Justice Hughes, after pointing out that, "because of the Federal questions raised by the bill," the court "had jurisdiction and was authorized to determine all the questions in the case, local as well as Federal," proceeded as follows: "A similar rule must be deemed to govern the application for preliminary injunction under the statute which requires a hearing before three judges, and authorizes an appeal to this court. * * * This statute applies to cases in which the preliminary injunction is sought in order to restrain the enforcement of a state enactment upon the ground of its 'unconstitutionality.' The reference, undoubtedly, is to an asserted conflict with the Federal Constitution, and the question of unconstitutionality, in this sense, must be a substantial one. But, where such a question is presented, the application is within the provision, and this being so, it cannot be supposed that it was the intention of Congress to compel the exclusion of other grounds, and thus to require a separate motion for preliminary injunction, and a separate hearing and appeal, with respect to the local questions which are involved in the case, and would properly be the subject of consideration in determining the propriety of granting an injunction."

We think it clear, therefore, that we have jurisdiction to determine the local questions of statutory construction involved in this case, even although we do not find it necessary to decide the constitutional questions involved herein.

A decree may be presented in accordance with the terms and conclusions of this opinion.